J-S56022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| DANIEL VINCENT | : | |
| Appellant | : | No. 1135 EDA 2018 |

Appeal from the PCRA Order March 13, 2018
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0006201-2010

BEFORE:  PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.          **FILED DECEMBER 04, 2019**

Appellant, Daniel Vincent, appeals *pro se* from an order entered on March 13, 2018, which dismissed his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court thoroughly summarized the relevant facts and procedural history as follows:

> After a jury trial [Appellant] was found guilty of attempted murder, aggravated assault, robbery, burglary, and criminal conspiracy.  The incident that gave rise to [Appellant's] conviction took place in Darby Borough, Delaware County, Pennsylvania on November 30, 2009. The victim, Alex Adebisi lived in an apartment in Darby Borough.  At about 7:00 p.m. [] Adebisi was entertaining guests in his apartment.  Earlier in the day [] Adebisi saw [Appellant] and his co[-]defendant Anthony Shaw, outside of his apartment building rolling "weed."  [] Adebisi had also seen these two men previously that day in his friend "Max's" apartment. He asked the men to leave.  He described the two as black males, one taller and dark-skinned and the other, shorter with lighter

skin. During the course of the conversation [Appellant] asked [] Adebisi where he was from. [Appellant] and [] Adebisi discussed the fact that both had lived in Flatbush in New York City. The conversation ended and [] Adebisi joined several friends in his apartment.

Next, a short time later, [Appellant] and Shaw knocked on [] Adebisi's door and asked him for change for a $100.00 bill. [] Adebisi gave the men five [$20.00] bills in exchange for the $100.00 bill. He suggested in the course of the conversation that he hoped the $100.00 bill was not counterfeit. [] Adebisi closed the door and the men left.

Shortly thereafter there was another knock at the door. [] Adebisi opened the door expecting to find a person delivering Chinese food that he had ordered for his guests. [Appellant] and Shaw were at the door. A hall security light illuminated the area when [Appellant] forced his way in. [Appellant] punched [] Adebisi in the face and asked "where the money was?" [Appellant] told Shaw to shoot [] Adebisi and Shaw shot him in the left thigh. [] Adebisi struggled with Shaw over the gun. [Appellant] ordered Shaw to "kill the [n***er]" and Shaw shot [] Adebisi in the chest. [] Adebisi fell to the ground and [Appellant] got on top of him, and put his hands on the victim's throat, "strangling" him.

[] Adebisi yelled for the police and [Appellant] and Shaw ran. [] Adebisi's guests had taken refuge in the bathroom during the incident and one of them called 911. [] Adebisi crawled [into] the living room where he waited, in fear of his life until police officers and paramedics arrived. [] Adebisi testified that he was "blacking out." He was in pain and had a fear of dying that he could not describe.

[] Adebisi was transported to the University of Pennsylvania Hospital. Officer Charles Schuler of the Darby Borough Police Department traveled with him in the ambulance. During transport Officer Schuler attempted to interview [] Adebisi because there was a concern that [] Adebisi would die as a result of the injuries that he sustained. [] Adebisi appeared to be in a great deal of pain and the [EMTs] were tending to his wounds and administering oxygen. Officer Schuler reported that [] Adebisi said that he was shot by two men that he had never seen before. One was a small, dark-skinned black man wearing a gray hoodie and [] Adebisi could not remember anything about the second man. During the course of this interview Officer Schuler was repeatedly interrupted

- 2 -

by medics and at other times [] Adebisi was unable to respond. At the hospital [] Adebisi was immediately taken to a trauma bay and he was not questioned any further. Officer Schuler was told that [] Adebisi couldn't answer any more questions. [] Adebisi was in a coma for two days following emergency surgery. At trial[,] [] Adebisi testified that he did not recall speaking to Officer Schuler during his transport and that he had no recollection of ever saying that he had never seen the two men before.

On December 2, 2009 Lieutenant Richard Gibney of the Darby Borough Police Department visited [] Adebisi while he was in the Intensive Care Unit. [] Adebisi was shown a photo array and he quickly picked a photo of Anthony Shaw from the array and identified him as the shooter. The next day Lt. Gibney returned to the hospital with a second photo array that included [Appellant's] photo. [] Adebisi picked out [Appellant's] photo and identified him as the man who had held him down and who ordered Shaw to shoot him. [] Adebisi described the incident and recalled that [Appellant], the taller man[,] ordered Shaw to shoot him and that Shaw complied. Further, [Appellant] then held [] Adebisi on the floor waiting for him to die.

On September 15, 2011 the jury returned the guilty verdicts. On December 15, 2011 an aggregate sentence of [15] to [30] years of incarceration to be followed by five years of probation was imposed. [This Court] affirmed [Appellant's] judgment of sentence on October 22, 2012.

On November 20, 2013 Norris E. Gelman, Esq[.] filed a [PCRA] petition on [Appellant's] behalf. The Commonwealth's response was filed on March 10, 2014 and on April 9, 2014 the [PCRA court] entered an order advising the parties of its intent to dismiss the petition without an evidentiary hearing. On May 15, 2014 the petition was dismissed.

[On May 11, 2014,] the [PCRA court] received a "motion to remove counsel request for leave to file *pro* [] *se* amended [PCRA] petition," *via* first class mail. In this motion [Appellant] complained of [] Gelman's failure to respond to the April 9th notice of intent to dismiss. The [PCRA court] forwarded this correspondence to [] Gelman and [] Gelman filed a notice of appeal on May 22, 2014[.] On May 30, 2014 [] Gelman was ordered to file a concise statement of errors complained of on appeal on [Appellant's] behalf.

On June 2, 2014 the [PCRA court] scheduled a hearing for June 12, 2014 to address [Appellant's] request to remove [] Gelman and to proceed *pro se*. The hearing was conducted *via* two-way simultaneous audio-visual communication. [During the hearing, the PCRA court determined that Appellant did not wish to waive his right to counsel. He simply wanted a new lawyer.] On [June 12, 2014] the [PCRA court appointed] new counsel, Henry DiBenedetto Forrest, Esq[.] to represent [Appellant] on appeal.

[On July 9, 2014] [] DiBenedetto Forrest petitioned the [PCRA court] for an extension of time in which to file a concise statement of errors on appeal. [That same day, the PCRA court granted counsel's request] and [ordered Appellant] to file a Rule 1925(b) statement within [30] days. On July 30, 2014 [] DiBenedetto Forrest filed a petition for remand in [this Court]. The petition alleged that in the counselled PCRA petition[,] [] Gelman failed to include all of [Appellant's] post-conviction claims and that on May 11, 2014, before the petition was dismissed[,] [Appellant] made a request to proceed *pro se* and for leave to file an amended PCRA petition pursuant to the "prisoner mailbox rule." On August 12, 2014[,] upon new counsel's request[,] the [PCRA court] stayed the [July 9, 2014 order directing Appellant to file a Rule 1925(b) concise statement] pending [this Court's] consideration of [Appellant's] petition for remand.

[This Court denied Appellant's petition for remand on] August 25, 2014. On August 27, 2014 the PCRA court ordered [Appellant] to file a [Rule 1925(b) statement]. [Appellant's Rule 1925(b) statement] was filed on September 25, 2014.

\*\*\*

The PCRA court's Rule 1925(a) opinion was filed on October 2, 2014. In that opinion[,] the issues raised by [] Gelman in the original PCRA petition were addressed. Because issues relating to [Appellant's] claim that [] Gelman provided ineffective assistance in PCRA proceedings were never litigated[,] the PCRA court suggested that a remand to address the [alleged ineffectiveness of PCRA counsel] would be appropriate in this case. Thereafter a "joint petition to permit discontinuance pursuant to Pa.R.A.P. 1973 and to remand to the PCRA court," was filed by [] DiBenedetto [Forrest]. On March 31, 2015 an order remanding the case to the PCRA court for further proceedings and relinquishing jurisdiction was entered in [this Court].

PCRA proceedings resumed with [] DiBenedetto [Forrest] representing [Appellant]. On [April 13, 2015, Appellant] was ordered to file a response to the notice of intent to dismiss that was entered on April [9], 2014. After several [extensions] of time were granted, on February 5, 2016[,] [] DiBenedetto Forrest filed a response to the notice[.] In his response[,] [] DiBenedetto [Forrest] renewed the [claims] that were raised by former counsel [] Gelman and raised several additional issues that [] Gelman did not raise, [including] a claim of [] Gelman's ineffectiveness. [] DiBenedetto Forrest asked for leave to file an amended PCRA petition and that request was granted.

Although [] [DiBenedetto] Forrest represented [Appellant], [Appellant] on March 14, 2016, filed a *pro se* petition for leave to amend his PCRA petition. This motion was followed by a motion to proceed *pro se* that was filed on March 30, 2016. In response to the March 30th motion[,] a **Grazier**[1] hearing was scheduled. The **Grazier** hearing took place on May 25, 2016. At the hearing, [Appellant] expressed his dissatisfaction with Attorney [DiBenedetto] Forrest's failure to follow [Appellant's] direction regarding all of the issues that [Appellant] wanted to be included in an amended PCRA petition. Attorney [DiBenedetto] Forrest confirmed that a difference of opinion on matters of strategy existed between he and [Appellant].

On June 8, 2016[,] an order accepting [Appellant's] waiver of his right to counsel was entered. [Appellant] was ordered to file an amended petition on or before June 27, 2016.

On August 15, 2016[,] after a request for an extension of time was granted, [Appellant] filed a *pro se* amended PCRA petition. The Commonwealth was directed to file a reply. Without leave of [the PCRA court,] [Appellant] filed supplemental amended petitions on September 12, 2016 and on October 11, 2016. The Commonwealth's response was filed on December 16, 2016. [Appellant] filed a response on January 16, 2017.

An evidentiary hearing limited to two issues raised by [Appellant] was scheduled[.] [The hearing addressed:] 1) whether PCRA counsel (Gelman) provided ineffective assistance for failing to raise trial counsel's ineffective assistance in advising [Appellant] whether to testify at trial[,] and 2) whether PCRA counsel provided ineffective assistance for failing to raise trial counsel's failure to

---

[1] **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998).

investigate and present named alibi witnesses. The hearing was scheduled for February 28, 2017[, but] was continued several times at [Appellant's] request. Finally, on May 3, 2017 a hearing took place.

At the May 3, 2017 [hearing,] Robert Datner, Esq[.] appeared on behalf of the [Appellant]. [] Datner advised the [PCRA court] that he was unable to proceed on the "*alibi*" issue because [Appellant's] witnesses [] failed to appear. On further inquiry, [Appellant] confirmed that he independently told the witnesses not to appear because the hearing was going to be continued. The hearing proceeded with the witnesses that were available[,] although [Appellant] stated the he "was uncomfortable with this hearing right now." The [PCRA court] heard the testimony of trial counsel, John List, Esq[.,] and the direct testimony of [Appellant]. The hearing was scheduled to resume the next day but [Appellant] was not prepared to proceed and a new date was set.

Attorney Scott Kramer, Esq[.] entered his appearance [on behalf of Appellant] on August 4, 2017. A hearing was scheduled for September 11, 2017 and[,] after several requested continuances[,] the evidentiary hearing resumed on November 9, 2017. [Appellant] was subject to cross[-]examination and [] given the opportunity to call the *alibi* witnesses that he alleged had been identified and available at the time of trial. The testimony was closed and [] Kramer was granted leave to submit a memorandum of law in support of [Appellant's] claim for relief.

After considering the claims alleged, all of the testimony and the memoranda submitted by the parties, on March 13, 2018 the PCRA petition was denied. [] Kramer filed a motion to withdraw his appearance on March 23, 2018. The petition alleged in vague terms that differences between [Appellant] and [] Kramer compelled him to withdraw. On March 29, 2018 [Appellant] filed a motion to "remove" [] Kramer. It was alleged[,] *inter alia*, that [] Kramer was not representing [] [Appellant's] interests. After a hearing, [] the [PCRA court, on April 4, 2018,] granted [] Kramer's request to withdraw. At the hearing, upon the [PCRA court's] questioning, [Appellant] stated that he did not wish to waive his right to counsel but wanted new counsel. The [PCRA court therefore] appointed Scott D. Galloway, Esq[.] [] Galloway filed a timely notice of appeal on April 10, 2018 and a concise statement of errors complained of on appeal on May 11, 2018. However, on May 7, 2018 [Appellant] once again petitioned for the removal of counsel.

- 6 -

A hearing was convened on June 21, 2018. At the conclusion of the hearing [Appellant] was granted leave to proceed *pro se* and on June 25, 2018[, the trial court entered an order declaring that Appellant knowingly, voluntarily, and intelligently waived his right to counsel.] [This appeal followed].[2]

PCRA Court's Opinion, 11/7/18, at 1-10 (internal citations, footnotes, and superfluous capitalization omitted) (footnote added).

Appellant raises the following issues on appeal:

I. Did the PCRA court fail to allow [Appellant] "to develop the record" by presenting evidence to support his claim of ineffectiveness of trial counsel for failing to investigate, interview and call *alibi* witnesses?

II. Did the PCRA court [err] in dismissing the claim that [trial] counsel provided ineffective assistance for failing to request a **Kloiber**[3] charge and for failing to object to the [trial] court's failure to include a **Kloiber** charge?

III. [Withdrawn on appeal].

IV. Did the PCRA court err by denying the claim that trial counsel was ineffective for inducing [Appellant] to waive his right to testify through erroneous advice?

V. Did the PCRA court err by denying the claim that trial counsel was ineffective for failing to investigate, interview, and call willing *alibi* witnesses?

VI. Did the PCRA court err in denying [Appellant's] claim of ineffective assistance based on trial counsel's failure to object to the [trial] court's jury instruction which introduced a 'new theory?'

---

[2] The PCRA court entered an order on May 11, 2018 directing Appellant to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b). After several requests for extensions of time, Appellant timely complied. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on November 7, 2018.

[3] **Commonwealth v. Kloiber**, 106 A.2d 820 (Pa. 1954).

VII. Did the PCRA court err in denying [Appellant's] claim of ineffective assistance based on trial counsel's failure to object to the [trial court's] "improper amendment" of the robbery charge?

VIII. Did the PCRA court err in denying [Appellant's] claim of ineffective assistance based on trial counsel's failure to challenge the false statement and robbery charge in the affidavit of probable cause?

IX. Did the PCRA court err in denying [Appellant's] claim of ineffective assistance based on trial counsel's failure to interview delivery driver Kathy Totaro and failure to call her as a witness at trial?

X. Did the PCRA court err in denying [Appellant's] claim of ineffective assistance based on trial counsel's failure to cross-examine witness Tanisha Garraway with her prior statement?

XI. Did the PCRA court [err] in denying [Appellant's] claim of ineffective assistance based on trial counsel's failure to cross-examine Lieutenant Gibney regarding 'other suspect?'

XII. Whether the PCRA court erred in denying Appellant's claim of ineffectiveness of trial counsel, where trial counsel failed to object to the court's charge which omitted any discussion of identification and for failure to request [] cautionary *Kloiber* instructions as mandated by [Pennsylvania Suggested Standard Jury Instruction (Crim.) 4.07B "Identification Testimony—Accuracy in Doubt"] as warranted whenever a line-up is denied?

XIII. Whether the PCRA court erred in denying Appellant's claim of ineffectiveness of PCRA counsel, where PCRA counsel failed to raise direct appeal counsel's ineffectiveness for failing to raise claims which were properly preserved [prior to trial]?

XIV. Whether the PCRA court erred in denying Appellant's claim of ineffectiveness of trial counsel, where trial

counsel failed to alert the court to 'antagonistic defenses' in his motion for severance?

XV. Whether the PCRA court erred in denying Appellant's claim of PCRA counsel's ineffectiveness for failing to raise the cumulative effects of trial counsel's ineffectiveness, which severely prejudiced Appellant and denied him a fair trial?

Appellant's Brief at 4-5.

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable James P. Bradley. We conclude that Appellant is not entitled to relief in this case and that Judge Bradley's November 7, 2018 opinion accurately disposes of Appellant's issues on appeal. Therefore, we affirm on the basis of Judge Bradley's opinion and adopt it as its own.[4] In any future filing with this or any other court addressing this ruling, the filing party shall attached a copy of Judge Bradley's November 7, 2018 opinion.

Order affirmed.

_____

[4] While we adopt Judge Bradley's opinion, we note the following. With respect to Appellant's tenth issue, we do not adopt the portion of the PCRA court's opinion concluding that Appellant's claim lacked arguable merit. **See** PCRA Court Opinion, 11/7/19, at 32-33. Rather, we conclude that Judge Bradley accurately determined that trial counsel had a reasonable basis for his decision not to cross-examine Garraway as to avoid the possibility that her responses would corroborate Appellant's identification as the perpetrator. **Id.** at 32-33. Additionally, we separately address issues 12, 13, and 14, which were included in Appellant's October 11, 2016 submission. **See** Appellant's Amended PCRA Petition, 10/11/16, at 1-11. We agree with the PCRA court that Appellant waived these claims because he failed to obtain "leave to amend" his petition. PCRA Court Opinion, 11/7/19, at 34. We note, however, that the PCRA court failed to expressly state that issue 13 was waived. **Id.** at 34-36. Upon review, we conclude that issue 13 is waived.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/4/19

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :    CP-23-CR-6201-2010

              : 

           vs.            :    1135 EDA 2018

              : 

      DANIEL VINCENT        : 

              : 

William Toal, III, Esquire, on behalf of the Commonwealth
Daniel Vincent, pro se

# O P I N I O N

Bradley, J.                      FILED:   11/7/18

Petitioner, Daniel Vincent, appeals from the March 13, 2018 Order dismissing his Post Conviction Relief Act (PCRA) petition after an evidentiary hearing.

The facts that gave rise to the Petitioner's conviction and the proceedings before the trial court were set forth in the Opinion filed on October 2, 2014 in conjunction with a prior appeal:

> After a jury trial Petitioner was found guilty of attempted murder, aggravated assault, robbery, burglary, and criminal conspiracy. The incident that gave rise to Petitioner's conviction took place in Darby Borough, Delaware County, Pennsylvania on November 30, 2009. The victim, Alex Adebisi lived in an apartment in Darby Borough. See N.T. 9/13/11 pp. 28-30. At about 7:00 p.m. Mr. Adebisi was entertaining guests in his apartment. Earlier in the day Mr. Adebisi saw Petitioner and his co-defendant Anthony Shaw, outside of his apartment building rolling "weed. "

1

Id. at 75, 80-81. Mr. Adebisi had also seen these two men previously that day in his friend "Max's" apartment. Id. at 74. He asked the men to leave. He described the two as black males, one taller and dark-skinned and the other, shorter with lighter skin. Id. at 81-82. During the course of the conversation Petitioner asked Mr. Adebisi where he was from. Petitioner and Mr. Adebisi discussed the fact that both had lived in Flatbush in New York City. Id. at 82-82. The conversation ended and Mr. Adebisi joined several friends in his apartment.

Next, a short time later, Petitioner and Shaw knocked on Mr. Adebisi's door and asked him for change for a $100.00 bill. Id. at 84. Mr. Adebisi gave the men five twenty-dollar bills in exchange for the $100.00 bill. Id. at 84. He suggested in the course of the conversation that he hoped the $100.00 bill was not counterfeit. Id. Mr. Adebisi closed the door and the men left.

Shortly thereafter there was another knock at the door. Mr. Adebisi opened the door expecting to find a person delivering Chinese food that he had ordered for his guests. Id. at 87. Petitioner and Shaw were at the door. A hall security light illuminated the area when Petitioner forced his way in. Id. at 89-90. Petitioner punched Mr. Adebisi in the face and asked "where the money was?" Id. at 93. Petitioner told Shaw to shoot Mr. Adebisi and Shaw shot him in the left thigh. Id. at 89, 93, 100. Mr. Adebisi struggled with Shaw over the gun. Petitioner ordered Shaw to "kill the nigger" and Shaw shot Mr. Adebisi in the chest. Id. at 90-101, 109, 113. Mr. Adebisi fell to the ground and Petitioner got on top of him, and put his hands on the victim's throat, "strangling" him. Id. at 99.

Mr. Adebisi yelled for the police and Petitioner and Shaw ran. Id. at 99. Mr. Adebisi's guests had taken refuge in the bathroom during the incident and one of them called 911. Id. at 115. Mr. Adebisi crawled in to the living room where he waited, in fear of his life until police officers and paramedics arrived. Id. at 124. Mr. Adebisi testified that he was "blacking

2

out." Id. at 125. He was in pain and had a fear of dying that he could not describe. Id. at 127.

Mr. Adebisi was transported to the University of Pennsylvania Hospital. Id. at 126-128. Officer Charles Schuler of the Darby Borough Police Department traveled with him in the ambulance. N.T. 9/14/11 p. 121. During transport Officer Schuler attempted to interview Mr. Adebisi because there was a concern that Mr. Adebisi would die as a result of the injuries that he sustained. Mr. Adebisi appeared to be in a great deal of pain and the EMT's were tending to his wounds and administering oxygen. Id. at 122, 130, 137. Officer Schuler reported that Mr. Adebisi said that he was shot by two men that he had never seen before. One was a small, dark-skinned black man wearing a gray hoodie and Mr. Adebisi could not remember anything about the second man. Id. at 125-26. During the course of this interview Officer Schuler was repeatedly interrupted by medics and at other times Mr. Adebisi was unable to respond. Id. at 142, 144. At the hospital Mr. Adebisi was immediately taken to a trauma bay and he was not questioned any further. Officer Schuler was told that Mr. Adebisi couldn't answer any more questions. Id. at 136, 140. Mr. Adebisi was in a coma for two days following emergency surgery. N.T. 9/13/11 p. 130, 227. At trial Mr. Adebisi testified that he did not recall speaking to Officer Schuler during his transport and that he had no recollection of ever saying that he had never seen the two men before. Id. at 227, 232.

On December 2, 2009 Lieutenant Richard Gibney of the Darby Borough Police Department visited Mr. Adebisi while he was in the Intensive Care Unit. N.T. 9/14/11 p. 18. Mr. Adebisi was shown a photo array and he quickly picked a photo of Anthony Shaw from the array and identified him as the shooter. Id. at 18, 21-29. The next day Lt. Gibney returned to the hospital with a second photo array that included Petitioner's photo. Id. at 30-31. Mr. Adebisi picked out Petitioner's photo and identified him as the man who had held him down and who ordered Shaw to shoot him. Id. at

3

31. Mr. Adebisi described the incident and recalled that Petitioner, the taller man ordered Shaw to shoot him and that Shaw complied. Id. at 24. Further, Petitioner then held Mr. Adebisi on the floor waiting for him to die. Id. at 24-25.

On September 15, 2011 the jury returned the guilty verdicts. On December 15, 2011 an aggregate sentence of fifteen to thirty years of incarceration to be followed by five years of probation was imposed. The Superior Court affirmed judgment of sentence on October 22, 2012.

Commonwealth v. Vincent, (filed 10/2/14).

On November 20, 2013 Norris E. Gelman, Esquire filed a "Post Conviction Relief Act" Petition on Petitioner's behalf. The Commonwealth's response was filed on March 10, 2014 and on April 9, 2014 the Court entered an Order advising the parties of its intent to dismiss the petition without an evidentiary hearing. On May 15, 2014 the petition was dismissed.

Sometime thereafter, the Court received a "Motion to Remove Counsel Request for Leave to File pro-se Amended Post Conviction Relief Act Petition," via first class mail. In this motion Petitioner complained of Mr. Gelman's failure to respond to the April 9th Notice of Intent to Dismiss. The Court forwarded this correspondence to Mr. Gelman and Mr. Gelman filed a Notice of Appeal on May 22, 2014 from the Order dismissing the PCRA petition. On May 30, 2014 Mr. Gelman was ordered to file a Concise Statement of Errors Complained of on Appeal on Petitioner's behalf.

On June 2, 2014 the Court scheduled a hearing for June 12, 2014 to address Petitioner's request to remove Mr. Gelman and to proceed *pro se.* The hearing was

4

conducted via Two-Way Simultaneous Audio-Visual Communication. Mr. Gelman did not appear at the time scheduled for the hearing and the Court determined that Petitioner did not in fact wish to waive his right to counsel but instead wanted a new lawyer. On the same day the Court went on to appoint new counsel, Henry DiBenedetto Forrest, Esquire to represent petitioner on appeal.

Mr. DiBenedetto Forrest petitioned the Court for an extension of time in which to file a Concise Statement of Errors on Appeal. This request was granted on July 9, 2014 and Petitioner was ordered to file a Rule 1925(b) statement within thirty days. On July 30, 2014 Mr. DiBenedetto Forrest filed a petition for remand in the Superior Court. The petition alleged that in the counselled PCRA petition Mr. Gelman failed to include all of Petitioner's post-conviction claims and that on May 11, 2014, before the petition was dismissed Petitioner made a request to proceed *pro se* and for leave to file an amended PCRA petition pursuant to the "prisoner mailbox rule.[1] On August 12, 2014 upon new counsel's request the Court stayed the Order entered on July 9, 2014 pending the Superior Court's consideration of Petitioner's petition for remand.

The petition for remand was denied in the Superior Court by Order filed on August 25, 2014. On August 27, 2014 the PCRA Court ordered Petitioner to file a Concise Statement of Errors Complained of on Appeal. Petitioner's Concise Statement of Errors Complained of on Appeal was filed on September 25, 2014.

In the "Concise Statement of Errors Complained of on Appeal Pursuant to Pa. Rule of Appellate Procedure 1925(B)" filed on September 25, 2014 the Petitioner

---

[1] See generally Commonwealth v. Ousley, 21 A.3d 1238 (Pa. Super. 2011). In a return receipt attached to the petition as Exhibit "D" it appears that this petition was delivered to the Delaware County Courthouse Complex on May 14, 2014.

5

complained of errors committed by the PCRA Court in dismissing the petition and also claimed that Mr. Gelman failed to provide effective assistance of counsel throughout the PCRA proceedings. Regarding the allegations of court error, Petitioner claimed that the PCRA Court erred when it dismissed without a hearing his claims that trial counsel provided ineffective assistance because he failed to request a *Kloiber* charge and failed to object to the Court's instructions to the jury at the close of trial. Regarding his claim of ineffective assistance of PCRA counsel Mr. Gelman, Petitioner claimed that Mr. Gelman failed to include several meritorious claims in his PCRA petition including the following: trial counsel failed to object to the Court's attempted murder instruction, trial counsel failed to object to the Commonwealth's motion to amend an Information at the time of trial, trial counsel failed to investigate, interview or call at trial unidentified medical personnel who treated the victim, trial counsel failed to seek expert testimony relating to human perception and memory as it relates to eye witness identification, trial counsel failed to effectively cross-examine the "key Commonwealth witness regarding his "clouded misperceptions and Inconsistencies within the identification of the perpetrator," and that the PCRA Court erred in dismissing the PCRA petition without considering Petitioner's timely *pro se* request to raise the foregoing issues.

The PCRA Court's Rule 1925(b) Opinion was filed on October 2, 2014. In that Opinion the issues raised by Mr. Gelman in the original PCRA petition were addressed. Because issues relating to the claim that Mr. Gelman provided ineffective assistance in PCRA proceedings were never litigated the PCRA Court suggested that a remand to address the PCRA ineffectiveness claims would be appropriate in this case. Thereafter a

6

"Joint Petition To Permit Discontinuance Pursuant To PA.R.A.P. 1973 And To Remand To The PCRA Court," was filed by Mr. DiBenedetto. On March 31, 2015 an Order remanding the case to the PCRA court for further proceedings and relinquishing jurisdiction was entered in the Superior Court.

PCRA proceedings resumed with Mr. DiBenedetto representing the Petitioner. On August 20, 2015 Petitioner was Ordered to file a response to the Notice of Intent to Dismiss that was entered on April 10, 2014. After several requests for an extension of time were granted, on February 5, 2016 Mr. DiBenedetto Forrest filed a response to the Notice on February 5, 2016. In his response Mr. DiBenedetto renewed the issues that were raised by former counsel Mr. Gelman and raised several additional issues that Mr. Gelman did not raise, thus raising a claim of Mr. Gelman's ineffectiveness. Mr. DiBenedetto Forrest asked for leave to file an amended PCRA petition and that request was granted. See Trial Court Order, February 11, 2016.

Although Mr. Forrest represented Petitioner, on March 14, 2016 Petitioner filed a *pro se* petition for leave to amend his PCRA petition. This motion was followed by a motion to proceed *pro se* that was filed on March 30, 2016. In response to the March 30th motion a *Grazier* hearing was scheduled. The *Grazier* hearing took place on May 25, 2016. At the hearing Petitioner expressed his dissatisfaction with Attorney Forrest's failure to follow Petitioner's direction regarding all of the issues that Petitioner wanted to be included in an amended PCRA petition. See generally N.T. 5/25/16. Attorney

7

Forrest confirmed that a difference of opinion on matters of strategy existed between he and Petitioner[2].

On June 8, 2016 an Order accepting Petitioner's waiver of his right to counsel was entered. Petitioner was ordered to file an amended petition on or before June 27, 2016.

On August 15, 2016 after a request for an extension of time was granted, Petitioner filed a *pro se* amended PCRA petition. The Commonwealth was directed to file a reply. Without leave of Court Petitioner filed a supplemental amended petitions on September 12, 2016 and on October 11, 2016. The Commonwealth's response was filed on December 16, 2016. Petitioner filed a response on January 16, 2017.

An evidentiary hearing limited to two issues raised by Petitioner was scheduled: 1) whether PCRA counsel (Mr. Gelman) provided ineffective assistance for failing to raise trial counsel's ineffective assistance in advising Petitioner whether to testify at trial and 2) whether PCRA counsel provided ineffective assistance for failing to raise trial counsel's failure to investigate and present named alibi witnesses. The hearing was scheduled for February 28, 2017. The hearing was continued several times at the Petitioner's request. Finally, on May 3, 2017 a hearing took place.

At the May 3, 2017 Robert Datner, Esquire appeared on behalf of the Petitioner.[3] Mr. Datner advised the Court that he was unable to proceed on the "alibi" issue because

---

[2] Attorney Forrest stated:
"Your Honor without compromising the attorney/client relationship from counsel's end, I would suggest that as a matter of strategy counsel has an opinion as to the merit of that counsel has a duty before the tribunal to submit non -frivolous issues before the Court. And by submitting frivolous issues before the Court that it would be unethical from this attorney's standpoint to pursue the same. I'll leave it at that."
N.T. 5/25/16 p. 12.

8

Petitioner's witnesses had failed to appear. On further inquiry, Petitioner (Daniel Vincent) confirmed that he independently told the witnesses not to appear because the hearing was going to be continued. N.T. 5/3/17 p. 6. The hearing proceeded with the witnesses that were available although Petitioner stated the he "was uncomfortable with this hearing right now." Id. at 10. The Court heard the testimony of trial counsel, John List, Esquire and the direct testimony of Petitioner. The hearing was scheduled to resume the next day but the Petitioner was not prepared to proceed and a new date was set.

Attorney Scott Kramer, Esquire entered his appearance on August 4, 2017. A hearing was scheduled for September 11, 2017 and after several requested continuances the evidentiary hearing resumed on November 9, 2017. The Petitioner was subject to cross examination and the Petitioner was given the opportunity to call the alibi witnesses that he alleged had been identified and available at the time of trial. See N.T. 11/9/17. The testimony was closed and Mr. Kramer was granted leave to submit a memorandum of law in support of Petitioner's claim for relief.

After considering the claims alleged, all of the testimony and the memoranda submitted by the parties, on March 13, 2018 the PCRA petition was denied. Mr. Kramer filed a motion to withdraw his appearance on March 23, 2018. The petition alleged in vague terms that differences between the Petitioner and Mr. Kramer compelled him to withdraw. On March 29, 2018 Petitioner filed a motion to "remove" Mr. Kramer. It was alleged *inter alia*, that Mr. Kramer was not representing the Petitioner's interests. After

---

[3] Although Mr. Datner was privately retained he sought IFP status for Petitioner to enable him to obtain notes of testimony. Petitioner was allowed to obtain notes with costs borne by the County of Delaware.

a hearing, on April 4, 2018 the Court granted Mr. Kramer's request to withdraw. At the hearing, upon the Court's questioning, Petitioner stated that he did not wish to waive his right to counsel but wanted new counsel. The Court appointed Scott D. Galloway, Esquire. Mr. Galloway filed a timely Notice of Appeal on April 10, 2018 and a Concise Statement of Errors Complained of on Appeal on May 11, 2018. However, on May 7, 2018 Petitioner once again petitioned for the removal of counsel.

A hearing was convened on June 21, 2018. At the conclusion of the hearing Defendant was granted leave to proceed *pro se* and on June 25, 2018 an Order documenting the waiver of the right to counsel as knowingly, voluntarily and intelligently entered was filed.

On May 11, 2018 an Order directing Petitioner to file a Concise Statement of Errors Complained of on Appeal was entered. Petitioner requested several extensions of time in which to comply. On October 12, 2018 Petitioner's Rule 1925(b) Statement was filed. Claims of error are identified in fifteen paragraphs. Theses claims will be addressed *seriatim*.

<u>Post Conviction Relief Act</u>

"To be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his or her conviction or sentence resulted from one or more of the circumstances enumerated in 42 Pa.C.S. § 9543(a)(2). These circumstances include a violation of the Pennsylvania or United States Constitution and ineffective assistance of counsel which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(i), (ii). Furthermore, a petitioner must establish that the claims of error raised in

10

the PCRA petition have not been previously litigated or waived and that "the failure to litigate the issue prior to or during trial, during unitary review or on direct appeal could not have been the result of any rational, strategic or tactical decision by counsel." 42 Pa.C.S. § 9543(a)(3) and (4); Washington, supra at 593. An issue has been waived "if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post[-]conviction proceeding." 42 Pa.C.S. § 9544(b). An issue has been previously litigated if "the highest appellate court in which the petitioner could have had review as a matter of right has ruled on the merits of the issue." 42 Pa.C.S. § 9544(a)(2)."

Commonwealth v. Paddy, 15 A.3d 431, 442 (Pa. 2011). Where a petitioner raises the ineffective assistance of counsel as the basis for relief he "must overcome the presumption that counsel is effective by establishing that "1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness." Id. at 442 citing Commonwealth v. Dennis, 597 Pa. 159, 950 A.2d 945, 954 (2008); Commonwealth v. Pierce, 515 Pa. 153, 527 A.2d 973, 975–76 (1987). Petitioner must "initially demonstrate that the issue underlying claim of ineffectiveness has arguable merit" to support his claim. See Commonwealth v. Granberry, 644 A.2d 204 (Pa. Super. 1994). It is well-settled that failure to establish any one of the three prongs that are necessary to establish the ineffective assistance of counsel will defeat the entire claim. See e.g. Commonwealth v. Moore, 860 A.2d 88, 94 (Pa. 2004) citing Commonwealth v.

11

<u>Basemore</u>, 744 A.2d 717, 738 n. 23 (Pa. 2000). <u>See also</u> <u>Commonwealth v.</u> <u>Robinson</u>, 82 A.3d 998, 1005 (Pa. 2013).

In <u>Commonwealth v. Rivers</u>, 786 A.2d 923, 929 (Pa. 2001) the Court explained "PCRA claims are not merely direct appeal claims that are made at a later stage of the proceedings, cloaked in a boilerplate assertion of counsel's ineffectiveness. In essence, they are extraordinary assertions that the system broke down." As a "general and practical matter, the fact that a claim is litigated through the lens of counsel ineffectiveness, rather than as a preserved claim of trial court error, makes it more difficult for the defendant to prevail." <u>Commonwealth v. Gribble</u>, <u>supra</u>. The harmless error analysis that is applicable where trial error is claimed on direct appeal is not applied. "Harmless error" analysis places the burden of proving that an alleged error did not contribute to the verdict beyond a reasonable doubt on the Commonwealth. <u>Id</u>. at 472. ( "[w]henever there is a 'reasonable possibility' that an error 'might have contributed to the conviction,' the error is not harmless."). In PCRA proceedings the burden of proof is with petitioner. <u>Commonwealth v. Gribble</u>, <u>supra</u>. Counsel is presumed effective and not every error by counsel will result in a constitutional violation of a defendant's Sixth Amendment right to counsel. <u>Id</u>. The petitioner must prove actual prejudice: that is that counsel's conduct had an actual adverse effect on the outcome of the proceedings. <u>Id</u>. Stated differently, that "there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." <u>Id</u>.

12

"There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." Commonwealth v. Jones 942 A.2d 903, 906 (Pa.Super.2008) *citing* Commonwealth v. Barbosa, 819 A.2d 81 (Pa.Super. 2003). Where the court can determine, after examining the record, that the arguable merit of the claim has not been proven the petition can be dismissed without a hearing. Id. See Pa.R.Crim.P. 907. See also Commonwealth v. Payne, 794 A.2d 902, 906 (Pa. Super. 2002) ("right to an evidentiary hearing on a post-conviction petition is not absolute. A PCRA court may decline to hold a hearing if the petitioner's claim is patently frivolous and is without a trace of support in either the record or from other evidence;" "controlling factor in determining whether a petition may be dismissed without a hearing is the status of the substantive assertions in the petition." Id. *quoting* Commonwealth v. Weddington, 522 A.2d 1050, 1052 (Pa. 1987). A hearing on all issues raised in a PCRA is not required where all do not raise genuine issues of material fact. Where only some claims raise issues of fact, a hearing may be ordered on those issues alone. Pa.R.Crim.P. 907(3).

Did the PCRA Court fail to allow the Petitioner "to develop the record by presenting evidence to support his claim of ineffectiveness of trial counsel for failing to investigate, interview and call alibi witnesses?

This claim is refuted by the record. Petitioner was granted an evidentiary hearing on this issue. As noted, *supra*, a hearing was scheduled for February 28, 2017. It was continued several times at the Petitioner's request. Finally, on May 3, 2017 a hearing

13

took place. Robert Datner, Esquire, appeared on behalf of the Petitioner. Mr. Datner advised the Court that he was unable to proceed on the "alibi" issue because Petitioner's witnesses had failed to appear. On further inquiry, Petitioner personally confirmed that he independently told the witnesses not to appear because the hearing was going to be continued. N.T. 5/3/17 p. 6. The hearing proceeded with the witnesses that were available although Petitioner stated the he "was uncomfortable with this hearing right now." Id. at 10. The Court heard the testimony of trial counsel, John List, Esquire and the direct testimony of Petitioner. The hearing was scheduled to resume the next day but the Petitioner was not prepared to proceed and a new date was set.

A second hearing was convened after Attorney Scott Kramer, Esquire entered his appearance. The hearing was originally scheduled for September 11, 2017 and after several requested continuances the evidentiary hearing resumed on November 9, 2017. The Petitioner was subject to cross examination and the Petitioner was given the opportunity to call the alibi witnesses that he allegedly identified to trial counsel before trial and were available at the time of trial. See N.T. 11/9/17. While three witnesses were identified in his PCRA petition only Shirley Pierre, Petitioner's girlfriend, was called to testify. See id. at 34, 39. The testimony was closed and PCRA counsel Kramer was granted leave to submit a memorandum of law in support of Petitioner's claim for relief.

Petitioner and the plethora of attorneys that have represented him over time were granted the Court's indulgence in this matter time and time again. This claim is frivolous.

14

<u>Did the Court err in dismissing the claim that trial counsel provided ineffective assistance for failing to request a *Kloiber* charge and for failing to object to the Court's failure to include a *Kloiber* charge in jury instructions?</u>

The Opinion filed by this Court on October 2, 2014 in Petitioner's prior appeal (1556 EDA 2014), fully addressed this claim:

The claim that trial counsel provided ineffective assistance "by virtue of trial counsel's failure to object to the Court's charge which did not include a cautionary *Kloiber* instruction and for counsel's failure to request a cautionary instruction[4]" was set forth in the PCRA petition and was dismissed without a hearing after proper notice. Where a "witness is not in a position to clearly observe the assailant, or he is not positive as to identity, or his positive statements as to identification have been weakened by qualification or by failure to identify defendant on one or more occasions," the jury will be instructed that the witness's testimony must be received with caution. <u>Commonwealth v. Kloiber</u>, 106 A.2d 820 (Pa. 1954). In <u>Commonwealth v. Ali</u>, 10 A.3d 282 (Pa. 2010) the Court considered the arguable merit of a claim of ineffective assistance of counsel that was based on trial counsel's failure to request a *Kloiber* instruction and subsequent counsel's failure to raise this claim on appeal:

Under *Kloiber*, "a charge that a witness'[s] identification should be viewed with caution is required where the eyewitness: (1) did not have an opportunity to clearly view the defendant; (2) equivocated on the identification of the defendant; or (3) had a problem making an identification in the past." <u>Commonwealth v. Gibson</u>, 547 Pa. 71, 688 A.2d 1152, 1163 (1997) (*citing Kloiber*). Where an eyewitness has had "protracted and unobstructed views" of the defendant and consistently identified the defendant "throughout the investigation and at trial," there is no need for a *Kloiber* instruction. <u>Commonwealth v. Dennis</u>, 552 Pa. 331, 715 A.2d

---

[4] <u>See</u> "Concise Statement of Errors Complained of on Appeal Pursuant to Pa.Rule of Appellate Procedure 1925(B)."

15

404, 411 (1998). When the witness already knows the defendant, this prior familiarity creates an independent basis for the witness's in-court identification of the defendant and weakens ineffectiveness claims based on counsel failure to seek a *Kloiber* instruction. See Commonwealth v. Fisher, 572 Pa. 105, 813 A.2d 761, 770–71 (2002) (Opinion Announcing Judgment of the Court) (witness's in-court identification valid based on witness having known defendant for eleven years); Commonwealth v. [Freddie] Johnson, 433 Pa. 34, 248 A.2d 840, 841–42 (1969) (witness had known defendant for three years prior to robbery and murder; no trial court error in not issuing Kloiber instruction); see also Commonwealth v. [Clarence] Johnson, 419 Pa.Super. 625, 615 A.2d 1322, 1335–36 (1992) (witness knew defendant and "had seen him on several occasions" prior to murder; defendant not entitled to *Kloiber* instruction because witness's in-court identification was supported by independent basis).

10 A.3d at 303. In *Ali*, the defendant was found guilty of murder and related offenses. The victim's daughter was four-year's old when she witnessed the murder and was six year's old when she testified at trial. The Pennsylvania Supreme Court concluded that Ali's claim that trial counsel was ineffective due to his failure to request a *Kloiber* instruction had no arguable merit because none of the circumstances that warrant a *Kloiber* charge were present. The child had an unobstructed view of the defendant as he attacked her mother, she was also attacked by the defendant, she knew him from prior interactions and she did not equivocate in her identifications at trial or in prior proceedings. The Court explained that any perceived weaknesses in the witness's testimony "attributable to her tender years, the circumstances of the horrific experience, the subject matter, and her ability to recall details were matters of credibility for the jury as factfinder to decide; but those issues did not undermine [her] actual physical ability to identify appellant at the time and place of the murder, so

16

as to trigger the special identification testimony concerns underlying the *Kloiber* line of decisions." Id. at 304.

Petitioner here did not allege, and in fact conceded that Mr. Adebisi's identification was not rendered suspect by a lack of opportunity or an inability to observe his assailants. Through his trial testimony the Commonwealth established that Mr. Adebisi recognized both Petitioner and Shaw from two interactions earlier in the day. His assailants forced their way into his apartment and he recognized them immediately. He quickly identified both Petitioner and Shaw when he came out of his coma days after the shooting. At trial his in-court identification was unequivocal on both direct and on cross-examination. See N.T. 9/13/11 pp. 135, 156. Under these circumstances, the statements Mr. Adebisi gave during his ambulance ride where he was unable to give a description of Petitioner provided trial counsel an opportunity to challenge his credibility but it was not a "mis-identification" warranting a *Kloiber* instruction.[5] The Court

---

[5] The Standard Jury Instructions include the following *Kloiber* instruction:
The instruction reads:
4.07B (Crim) Identification Testimony—Accuracy in Doubt
1. In [his] [her] testimony, [name of witness] has identified the defendant as the person who committed the crime. There is a question of whether this identification is accurate.
2. A victim or other witness can sometimes make a mistake when trying to identify the criminal. If certain factors are present, the accuracy of identification testimony is so doubtful that a jury must receive it with caution. Identification testimony must be received with caution [if the witness because of bad position, poor lighting, or other reasons did not have a good opportunity to observe the criminal] [if the witness in [his] [her] testimony is not positive as to identity] [if the witness's positive testimony as to identity is weakened [by qualifications, hedging, or inconsistencies in the rest of [his][her] testimony] [by [his] [her] not identifying the defendant, or identifying someone else, as the criminal [at a lineup] [when shown photographs] [give specifics] before the trial] ] [if, before the trial, the defendant's request for a [lineup] [specify request] to test the ability of the witness to make an identification was denied and the witness subsequently made a less reliable identification] [if, [give specifics] ].

[First Alternative: Court rules as a matter of law that caution is required: ]

3. In this case [there was evidence that [ name of witness ] could not see the criminal clearly] [give specifics]. Therefore, you must consider with caution [his] [her] testimony identifying the defendant as the person who committed the crime.

[Second Alternative: When there is a jury issue as to whether caution is required: ]

delivered an accurate jury instruction regarding the credibility of witnesses and directed the jury to consider "[t]he accuracy of [a witness's] memory and recollection, his or her ability and opportunity to acquire knowledge of or to observe the matters concerning which he or she testifies, the consistency or inconsistency of his testimony, as well as the reasonableness or unreasonableness of all of the evidence in the case." N.T. 9/15/11 p. 8, 10. This instruction was both appropriate and adequate given the facts of this case.

This claim has remained unchanged and the foregoing analysis continues to apply.

## Did the Court err in dismissing the claim that trial counsel provided ineffective assistance for failing to object to the Court's charge on "demeanor evidence?"

Similarly, this claim was previously addressed in the Court's 2014 opinion:

Likewise, the claim that trial counsel provided ineffective assistance by failing to object when the Court instructed the jury that it making its credibility determinations it could consider the "demeanor" of the witnesses has no merit. The allegedly objectionable portion of the Court's instruction follows:

---

4. If you believe that [this factor is] [one or more of these factors are] present, then you must consider with caution [name of witness] 's testimony identifying the defendant as the person who committed the crime. If, however, you do not believe that [this factor] [at least one of these factors] is present, then you need not receive the testimony with caution; you may treat it like any other testimony.

5. You should consider all evidence relevant to the question of who committed the crime, including the testimony of [name of victim or witness], [any evidence of facts and circumstances from which identity, or non-identity, of the criminal may be inferred] [give other circumstances]. You cannot find the defendant guilty unless you are satisfied beyond reasonable doubt by all the evidence, direct and circumstantial, not only that the crime was committed but that it was the defendant who committed it.

Commonwealth v. Sanders, 42 A.3d 325, 332 n. 4 (Pa.Super. 2012).

18

> The matter of the credibility of a witness, that is, whether his or her testimony is believable and accurate in whole or in part is solely a matter for your determination. I'm going to mention some of the factors which might bear on that determination, whether the witness has any interest in the outcome of the case or has any friendship or animosity toward any of the persons involved in the case, the behavior of the witness on the witness stand and his or her own demeanor, his or her manner of testifying and whether he or she shows any bias or prejudice which might color their testimony.

N.T. 9/15/11 p. 10.

There is no relevant basis in law to support this claim. The Suggested Standard Jury Instruction, 4.17, Credibility Of Witnesses, General, includes the following as a factor to consider in determining whether to accept the testimony of a particular witness: "Did the witness testify in a convincing manner? [How did [he] [she] look, act, and speak while testifying? Was [his] [her] testimony uncertain, confused, self-contradictory, or evasive?]" The "demeanor" of witnesses is thus recommended as a permissible consideration in assessing the credibility of a witness. Further, an instruction on credibility, including the witness's demeanor as a factor for the jury's consideration, has been cited with approval by our Supreme Court. See e.g. Commonwealth v. Harris, 852 A.2d 1168(Pa. 2004). Demeanor is a factor that may be considered in determining credibility notwithstanding Petitioner's vague and unsupported due process claim. The instruction, read in it's entirely accurately conveyed the applicable law and accurately explained the relevant factors jury should consider in determining credibility.

<u>Did the PCRA court err by denying the claim that trial counsel was ineffective for inducing Petitioner to waive his right to testify through erroneous advice?</u>

19

At the PCRA hearings on May 3, 2017 and November 9, 2017 the Petitioner testified on his own behalf and offered the testimony of Attorney John J. List, Esquire who served as trial counsel.

To support a claim that trial counsel was ineffective for failing to present a petitioner as a witness, a petitioner bears the burden of proving that: "(1) counsel interfered with his client's freedom to testify, or (2) counsel provided specific advice so unreasonable that it otherwise vitiates a knowing and intelligent decision by the client not to testify. Commonwealth v. Preston, 613 A.2d 603, 605 (Pa. Super. 1992). Counsel is not ineffective where counsel's advice to the defendant was reasonable. For example, where a defendant could be impeached with a prior record of convictions for crimen *falsi* offenses it may not be unreasonable for counsel to advise his client not to testify. See e.g. Commonwealth v. Daniels, 999 A.2d 590, 596 (Pa. Super. 2010) *quoting* Commonwealth v. Whitney, 708 A.2d 471, 476 (Pa. 1998) (citations omitted).

Ultimately, whether to testify or not is a decision that lies with the defendant in a criminal trial. It is the defendant who has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Commonwealth v. Brown, 18 A.3d 1147, 1158 (Pa. Super. 2011) *citing* Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); Wainwright v. Sykes, 433 U.S. 72, 93, n. 1, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (Burger, C.J., concurring). Concerning these decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action. Id.

20

Defendant's decision not to testify was addressed in an extensive colloquy that was conducted by both trial counsel and by the Court at the close of the Commonwealth's case. See N.T. 9/14/11 pp. 96-101. In response to the Court's inquiries Defendant confirmed that he discussed possible defenses with counsel and he was comfortable with his decision not to testify. He affirmed that he was aware that he could change his decision at any time and that he had no additional questions for either trial counsel or for the Court. Id. See also N.T. 11/9/17 pp. 15-16. At the PCRA hearing Petitioner testified that Mr. List did not discuss the possibility that were he to testify he could be impeached only with prior convictions that were *crimen falsi* in nature. He testified that they discussed his extensive criminal history only once in connection with a negotiated plea offer. See 11/9/17 pp. 10-14. He claims that as a result he believed that his entire criminal history would be put before the jury if he chose to testify and that his decision was based on this misunderstanding. See N.T. 11/9/17 pp. 13-14 13.

In PCRA proceedings the Court sits as the factfinder and makes the necessary credibility determinations. See generally Commonwealth v. Spotz, 84 A.3d 294, 319 (Pa. 2014); Commonwealth v. Johnson, 966 A.2d 523, 539 (Pa. 2009); Commonwealth v. Basemore, 744 A.2d 717, 737 (Pa. 2000). In light of the record and after considering the testimony of trial counsel the Court determined that Petitioner's testimony was wholly lacking in credibility. Petitioner affirmed at the time of trial that after consultation with counsel he chose not to testimony and this decision was based on counsel's

21

professionally competent advice. His current testimony to the contrary does not alter this conclusion.

John J. List[6], a criminal trial attorney with forty years of experience representing defendants in criminal cases represented the Petitioner throughout the trial proceedings. N.T. 5/3/17 p. 11-12, 43. Before trial Mr. List brought a negotiated plea offer to the Petitioner and explained that in light of his extensive criminal history Petitioner would be exposed to a much stiffer sentence if he was found guilty after a trial. Id. at 21-23. Counsel supplied Petitioner and his family with his Prior Record Score and his history of criminal convictions to explain the advantages of entering a negotiated plea and to demonstrate the risk associated with going to trial. He did not, as Petitioner contends, tell the Petitioner that his entire criminal record could be used to impeach him at trial. Id. at 21-23.

Rather, before trial Mr. List discussed the possibility that if Petitioner testified his 2003 conviction for unauthorized use of a motor vehicle, a *crimen falsi*, could be put before the jury to impeach his credibility. Id. at 23, 51. Mr. List testified credibly that additional factors influenced his advice. Petitioner's testimony would have been that he was not present when Mr. Adebisi was shot and he was going to use an alibi as a defense. Id. at 28-30. Mr. List's primary concern was that if Petitioner testified as expected, the jury would also expect to hear from corroborating witnesses. Mr. List concluded that he would be unable to call any of the alibi witnesses that Petitioner identified because they couldn't provide reliable testimony: "When I spoke to those

---

[6] Mr. List passed away in April of 2018.

22

witnesses they couldn't get the times straight, the days straight, they couldn't get anything straight, and I came to the conclusion very quickly that they were going to get slaughtered if they took the stand, that they were making up stories to cover Mr. Vincent, so this was all part of it." Id. at 27-31. Mr. List considered Mr. Adebisi's identification problematic for the Commonwealth because it was made days several days after the shooting when Mr. Adebisi was in the hospital. Id. at 19, 34. The defense strategy was "to make the Commonwealth live up to their burden." Id. at 50. The suspect testimony of unreliable witnesses and the possibility that the Petitioner would inadvertently provide testimony that could help the Commonwealth's case were not worth the risk in Mr. List's view. See id. at 50, 52.

Mr. List testified credibly that he advised the Petitioner that he considered the identification testimony in this case weak, that he informed him that his prior *crimen falsi* conviction could be used to impeach him and that his alibi witnesses were unreliable. Id. at 45. In light of the foregoing he advised Petitioner not to testify. Mr. List described Petitioner as a "bright" individual with a "mind of his own" and confirmed that ultimately, after consultation with him Petitioner made his own decision. See N.T. 5/3/17 pp. 18-19, 26.

In light of the foregoing the Court concluded that Petitioner's allegation lacked credibility and that trial counsel's advice was reasonable given the circumstances.


Did the PCRA court err by denying the claim that trial counsel was ineffective for failing to investigate, interview or call willing alibi witnesses?

23

This claim too is refuted by the record and by the testimony offered at the PCRA hearing. In the same colloquy during which Petitioner's Fifth Amendment rights were addressed, Petitioner confirmed that after consultation with counsel he would not be calling alibi witnesses;

> Mr. List: And one other thing I want to cover her(sic), we have some people that have come forward to testify as potential alibi witness(sic). Have we talked about that?
>
> Mr. Vincent: Absolutely.
>
> Mr. List: Okay. And those three individuals that are willing to testify as alibi witnesses, have we talked about not only what their anticipated testimony would be, but what I anticipate would be the cross examination of those witnesses by the district attorney?
>
> Mr. Vincent: Yes. We had spoken.
>
> Mr. List: Based upon the discussions we've had, is it your feeling right now, and as Judge Bradley may tell you, you might be able to change this, not to call those witnesses to the stand?
>
> Mr. Vincent: Yes, at this present time.
>
> Mr. List: And what is your decision?
>
> Mr. Vincent: My decision is not to call these witnesses.
>
> The Court: Sir, do you have any questions you want to ask either your attorney or the Court at this time?
>
> Mr. Vincent: No, Your honor.

N.T. 9/14/11 pp. 99-100.

In Petitioner's PCRA petition three alibi witnesses that were allegedly available and willing to testify at trial were identified: Ruth Washington (Petitioner's sister),

24

Shirley Pierre (Petitioner's girlfriend) and Sabrina St. Ford (an employee at Vision's Bar in Philadelphia).

An alibi defense "places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." Commonwealth v. Dennis, 17 A.3d 297, 302 (Pa. 2011) *quoting* Commonwealth v. Roxberry, 602 A.2d 826, 827 (Pa. 1992). In connection with his claim that Mr. List provided ineffective assistance for failing to investigate and call alibi witnesses Petitioner bears the burden of proving the following by a preponderance of the evidence: (1) the witness existed; (2) the witness was available; (3) counsel knew of, or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony was so prejudicial to petitioner to have denied him or her a fair trial. Id. at 302. As in all claims of ineffective assistance a petitioner bears the burden of satisfying all prongs of the *Strickland* standard and the PCRA court is charged with determining the credibility of witnesses that testify in support of the claim. Id.

Petitioner had the opportunity to prove his claims at the evidentiary hearing. His claim, as it regards named alibi witnesses Ruth Washington, and Sabrina Ford requires no discussion because Petitioner failed to produce theses witnesses and his allegations remained unproven by any competent evidence. See Dennis, *supra.*

Shirley Pierce, Petitioner's girlfriend and the mother of a child fathered by Petitioner testified on November 9, 2017. Id. at 34, 40. She testified that she was with the Defendant from morning until night on November 30, 2009. See N.T. 11/9/17 pp.

25

35-37. They began the day on South Street, met the Petitioner's sister Ruth Washington at the Petitioner's brother's bar in West Philadelphia, took Ms. Washington to return a rental car and returned to the bar at about 6:30 p.m. when the Petitioner worked for his brother at the bar until they returned to Ms. Pierce's home in Northeast Philadelphia. Id. at 36. Ms. Pierce testified that she was available and willing to testify at trial. Id. at 37. She acknowledged a 2004 federal conviction for making false statements in connection with the purchase of a firearm[7]. Id. at 38-40. She testified that she was never contacted by Mr. List or by an investigator. She testified that Defendant asked her to testify but she never contacted or spoke to Mr. List. Id. at 40.

Ms. Pierce testified that although she attended the trial she had no memory of the Petitioner confirming his decision to forego alibi witnesses on the record. Id. at 41. She also stated that she did not speak to the Petitioner about the crime at the time it occurred. She didn't know anything about it until "the hearing." Id. at 41. Her testimony was vague and unconvincing.

Mr. List testified that the Petitioner gave him the names of positional alibi witnesses including his sister Ruth. He spoke with potential witnesses and they were "all over the map." N.T. 5/3/17 p. 29. The alibi that Petitioner and the alibi witnesses supplied was that he was at a "party" with friends and family members. Id. at 31. Mr. List had no recollection of the description of the day of November 30, 2009 that Ms. Pierre supplied in her testimony. Id. at 35. He specifically recalled speaking with Ruth Washington who told him that they were at a family party and with Petitioner's brother.

---

[7] Ms. Pierre admitted that she was convicted of conspiracy to commit a "false statement during the purchase of a firearm in federal court, a *crimen falsi*. Id. at 38-40

26

Petitioner's brother was unwilling to testify. Id. at 35, 37. Ruth Washington did not provide him with helpful times that matched up with the time of the offense. Id. at 37. He spoke to Ruth, Sabrina and Shirley and no one provided helpful information. See id. at 37-40. Mr. List testified: "I don't have any recollection of anything being told to me about an Enterprise rental car, about two trips back and forth to the bar. I don't have any recollection about Mr. Vincent tending bar and, quite frankly, after speaking with those women I didn't believe a word they told me. Id. at 40.

The testimony of Mr. List was credible; the testimony of Ms. Pierre and Petitioner was not. Even after six years passed and hearings were scheduled, continued and re-scheduled, the Petitioner failed to offer any corroborating testimony from witnesses who were allegedly with him and Ms. Pierce during the relevant time. Specifically, Ms. Peirce testified that from 6:30 p.m. onward she was at Petitioner's brother's bar with his brother and his sister in West Philadelphia. Neither family member testified at the PCRA hearing. Mr. List had no recollection of having ever being told, by any potential alibi witness that Petitioner took his sister to return a rental car earlier in the day and was in his brother's bar when the shooting occurred. Finally, Ms. Pierce testified that she attended the trial but never spoke with Mr. List or questioned why she was not being called as a witness. Her testimony was vague at times and nonsensical at other times. At the time of trial Petitioner was colloquied and offered the opportunity to object to Mr. List's failure to call Ms. Pierce to the stand. He did not. All of the credible evidence led the Court to conclude that this claim is meritless.

27

Did the PCRA Court err in denying Petitioner's claim of ineffective assistance based on trial counsel's failure to object to the Court's jury instruction which introduced a "new theory?

In the third claim set forth in the PCRA petition, it is alleged that trial counsel should be found ineffective for failing to object to the PPCRA Court's jury instruction wherein the Court stated: "First, we're going to discuss Attempted Murder. The Defendants in this case have been charged with Attempted Murder. To find either Defendant guilty of this offense you must find that the Defendant's (did) a certain act. In this particular case, Mr. Shaw is charged with shooting the alleged victim. Mr. Vincent is charged with attempting to strangle the alleged victim." N.T. 9/15/11 p. 15. The Court continues on to discuss the remaining elements of attempted murder, Namely specific intent to kill and the "substantial step" necessary to an finding of attempt. Id. at 15-16.

This claim is patently frivolous. Mr. Adebisi testified that Anthony Shaw shot him at Petitioner's direction and that after he fell to the ground Petitioner had his hands on Mr. Adebisi's throat, attempting to strangle him. At the same time Petitioner said, "die, die, die." N.T. 9/13/11 pp. 97-101. This portion of the jury instruction merely reflected the testimony that was heard at trial. It is proper for the trial court to explain to the jury the contentions of the parties, particularly when it is done in a manner that clearly shows he is not expressing his own views. See Commonwealth v. Rough, 275 Pa.Super. 50, 418 A.2d 605 (Pa. Super. 1980); Commonwealth v. Leonhard, 485 A.2d 444 (1984).

28

The contention that this instruction, "uninvitingly interfered with the defense strategy," when in fact the defense strategy was to challenge Mr. Adebisi' s identification is far-fetched at best. Petitioner knew from the outset that he and Shaw were charged with an attempted murder that was committed in the course of a robbery. The Court's charge was in conformity with the evidence and the presumption of trial counsel's competence is not overcome by trial counsel's failure to make the dubious objection that Petitioner suggests. Cf, Commonwealth v. DeMarco, 809 A.2d 256 (Pa. 2002) (Evidence supporting a jury instruction may be adduced by a defendant as part of his case, or may be found in the Commonwealth's own case-in-chief, or be elicited through cross-examination).

Did the PCRA Court err in denying Petitioner's claim of ineffective assistance based on trial counsel's failure to object to the Court's "improper amendment" of the robbery charge?

This claim is patently frivolous. The Criminal Information, No. 6201D of 2010, filed on November 4, 2010 charges each subsection of robbery, 18 Pa.C.S.A. §3701(a)(i-v), setting forth in detail each of the foregoing subsections. The verdict slip mirrored the Information. Defendant was sentenced to five to ten years of incarceration for one count of robbery, a first degree felony. Assuming *arguendo* that the Information charging robbery was in fact amended, an amendment may be allowed even after the closing arguments but before the court's charge and relief is warranted only where the amendment prejudices a defendant. See Commonwealth v. Page, 965

29

A.2d 1212, 1224 (Pa. Super. 2009). See also Commonwealth v. Roser, 914 A.2d 447, 454 (Pa.Super. 2006), *appeal denied* 927 A.2d 624 (Pa. 2007) ("Factors to be considered when determining whether Appellant was prejudiced by the Commonwealth's amendment include whether the amendment changes the factual scenario; whether new facts, previously unknown to appellant, were added; whether the description of the charges changed; whether the amendment necessitated a change in defense strategy; and whether the timing of the request for the amendment allowed for ample notice and preparation by appellant.")

## Did the PCRA Court err in denying Petitioner's claim of ineffective assistance based on trial counsel's failure to "challenge the false statement and robbery charge in the affidavit of probable cause?"

This is another patently frivolous claim. Petitioner alleges that the affidavit of probable cause contains false statements that led to a "false accusation" of robbery. Petitioner seems to base this claim on the fact that there was a discrepancy in Mr. Adebisi's testimony concerning when he realized that $1,000 dollars had been removed from his pocket, *i.e.*, whether he realized that he had been robbed of this money before or after the affidavit of probable cause was sworn. How this discrepancy can be transformed into a claim of material misrepresentation or fraud is unfathomable given the facts of this case. Lt. Gibney interviewed Mr. Adebisi while he was still in the Intensive Care Unit, on December 2, 2009. Mr. Adebisi reported that he was accosted and robbed by two intruders and one was armed.

This fanciful claim has no basis in law or fact.

30

<u>Did the PCRA Court err in denying Petitioner's claim of ineffective assistance based on trial counsel's failure to interview delivery driver Kathy Totaro and failure to call her as a witness at trial?</u>

Petitioner alleges that delivery driver Kathy Totaro could have provided evidence that was "key" to his defense, that is, that Mr. Adebisi always paid her with $100 bills. It is alleged that this evidence would have been relevant because it suggests that Mr. Adibesi was a drug dealer and impugns his credibility. This allegation is completely meritless. Whether Mr. Adibisi was a drug dealer or not has no bearing on the facts of this case or on Petitioner's defense, i.e., misidentification.

Additionally, this ineffective assistance claim fails procedurally and substantively:

There are two requirements for relief on an ineffectiveness claim for a failure to present witness testimony. The first requirement is procedural. The PCRA requires that, to be entitled to an evidentiary hearing, a petitioner must include in his PCRA petition "a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony." 42 Pa.C.S.A. § 9545(d)(1); Pa.R.Crim.P. 902(A)(15). The second requirement is substantive. Specifically, when raising a claim for the failure to call a potential witness, to obtain relief, a petitioner must establish that: (1) the witness existed; (2) the witness was available; (3) counsel was informed or should have known of the existence of the witness; (4) the witness was prepared to cooperate and would have testified on defendant's behalf; and (5) the absence of such testimony prejudiced him and denied him a fair trial. <u>Commonwealth v. Carson</u>, 559 Pa. 460, 741 A.2d 686, 707 (1999).

31

Commonwealth v. Reid, 99 A.3d 427, 438 (Pa. 2014). Petitioner failed to provide the required witness certification and failed to prove any of the substantive elements that are necessary to this claim.

Did the PCRA Court err in denying Petitioner's claim of ineffective assistance based on trial counsel's failure to cross-examine witness Tanisha Garraway with a prior statement?

Ms. Garraway was from New York and was visiting Mr. Adebisi when he was robbed and shot. See N.T.9/13/11pp. 326-27. Ms. Garraway did not identify Petitioner or Mr. Shaw at trial. She testified that she was in the apartment when there was a knock at the door and "somebody" barged in. She then saw Mr. Adebisi and "a big black man" fighting. Id. at 336, 337, 340-41. Petitioner claims that trial counsel was ineffective for failing to cross-examine Ms. Garroway with a prior statement in which she described the man as a dark-skinned male, six feet tall and about 200 pounds who was yelling in an "African language." He contends that Ms. Garraway's earlier description would have dis-credited Mr. Adebisi' s identification.

This claim has no merit. Ms. Garraway's alleged inconsistent statement could serve to impeach only her description of the assailant, not Mr. Adebisi' s. See generally Pa.R.E. 613, Witness's Prior Inconsistent Statement to Impeach; Witness's Prior Consistent Statement to Rehabilitate.

At trial Ms. Garraway described the man who wrestled with Mr. Adebisi as a "big black male." Mr. Adebisi described Petitioner as a "tall, dark-skinned" male. See id. at 81. He also recounted a conversation that took place earlier in the day where Petitioner asked him where he was from and where Mr. Adebisi said he was African: from Nigeria.

32

Petitioner replied that he was from New York and that he was Haitian. Id. at 81-90. As previously stated, Ms. Garraway was unable to identify Petitioner and her description of the assailant did differ somewhat from Mr. Adebisi's. Thus, any discrepancy was already before the jury. Further, from a practical standpoint, had trial counsel cross-examined Ms. Garraway regarding whether the assailant was yelling in an African, or any foreign language, Mr. Adebisi's testimony, that Petitioner identified himself to him as Haitian when they spoke earlier could have been corroborated and strengthened Mr. Adebisi's identification testimony.

This claim is speculative. It has no arguable merit and trail counsel was not ineffective for failing to act in the way Petitioner suggests.

Did the PCRA Court err in denying Petitioner's claim of ineffective assistance based on trial counsel's failure to cross-examine Lieutenant Gibney regarding "other suspects."

Petitioner claims that had trial counsel demonstrated, through cross-examination of Lieutenant Gibney, that "other suspects" were investigated in connection with this robbery "Officer Schuler's testimony concerning Mr. Adebisi's initial inability to identify a shooter would have been "embellished." This, he contends would have "attacked" Mr. Adebisi's identification.

While the extent to which law enforcement investigated and developed other suspects can be fodder for cross-examination, the Court can find no merit in this claim. The various police reports that Petitioner has attached to his petition, see Exhibit D, provide no support for this convoluted and speculative claim. See generally, Commonwealth v. Sepulveda, 55 A.3d 1108, 1133 (Pa. 2012) (counsel cannot be

33

deemed ineffective for failing to raise speculative claim); Commonwealth v. Charleston, 94 A.3d 1012, 1026 (Pa. Super. 2014) (Unsupported speculation does not establish "prejudice" that is essential to an ineffectiveness claim).

The claims included in Petitioner's "Motion for Leave to Supplement Amended Post-Conviction Relief Act Petition," filed on September 14, 2016 and "Motion for Leave to Supplement Amended Post-Conviction Relief Act Petition," filed on October 11, 2016 have bee waived.

Pennsylvania Rule of Criminal Procedure 905 allows the court to "grant leave to amend or withdraw a petition for post-conviction collateral relief at any time." "Amendment shall be freely allowed to achieve substantial justice" but amendments are not "self-authorizing" such that a petitioner may simply "amend" a pending petition with a supplemental pleading. See Commonwealth v. Porter, 35 A.3d 4, 12 (Pa. 2012). "Rather, the Rule explicitly states that amendment is permitted only by direction or leave of the PCRA court." 35 A.3d at 12.

The filing of unauthorized supplemental petitions and amendments to PCRA petitions have been condemned and are subject to waiver. See Commonwealth v. Mason, 130 A.3d 601, 607 (Pa. 2015); Commonwealth v. Reid, 99 A.3d 470, 484 (Pa. 2014) citing Commonwealth v. Elliott, 80 A.3d 415, 430 (Pa. 2013); Commonwealth v. Roney, 79 A.3d 595, 615–16 (2013); Commonwealth v. Porter, supra.

As stated above, on June 8, 2016 an Order accepting Petitioner's waiver of his right to counsel was entered. Petitioner was ordered to file an amended petition on or before June 27, 2016. On August 15, 2016 after a request for an extension of time was

34

granted, Petitioner filed a *pro se* amended PCRA petition. The Commonwealth was directed to file a reply. Without leave of court Petitioner filed supplemental amended petitions on September 12, 2016 and October 11, 2016. The Commonwealth's response was filed on December 16, 2016.

Petitioner was not granted leave to file additional amendments and/or supplements to the amended PCRA petition that was filed on August 15, 2016. Although these supplements were entitled "motions for leave," they were in fact attempts to add new claims. "Misdesignation does not preclude a court from deducing the proper nature of a pleading." Commonwealth v. Porter, 35 A.3d at 12 *citing* Commonwealth v. Abdul-Salaam, 996 A.2d 482 (Pa. 2010) ("involving deceptive labeling of PCRA pleading").

Because, as in *Porter, supra,* Petitioner had no right to unilaterally amend a pending petition, the additional claims for relief that are set forth in the unauthorized supplemental amendments are waived. It follows therefore, that the claims raised in paragraphs 12 and 14 of the Statement of Errors Complained of on Appeal are similarly waived on appeal.

The claims that are raised in paragraphs 13 and 15 of the Statement of Errors Complained of on Appeal have no arguable merit. Recognizing that a claim of ineffective assistance is discrete and separate from an underlying claim of trial court error, nevertheless an underlying issue of arguable merit must be raised. Petitioner has failed to plead or prove even identify an instance where direct appeal counsel provided ineffective assistance.

35

Finally, in paragraph number 15 Petitioner claims that the PCRA Court erred because it did not find PCRA counsel ineffective for failing to raise the "Cumulative Effects of trial counsel's ineffectiveness." Again, this boilerplate claim of error must be dismissed. As all of the forgoing demonstrates, Petitioner's claims of trial counsel's and PCRA counsel's ineffective assistance had no arguable merit. It is also true that "prejudice" was not demonstrated but his claims were not rejected on grounds of "prejudice." It is well-settled that no number of failed ineffectiveness claims may collectively warrant relief if they fail to do so individually. Commonwealth v. Busanet, 54 A.3d 35, 75 (Pa. 2012) ("where ineffectiveness claims are rejected for lack of arguable merit, there is no basis for an accumulation claim.") *citing* Commonwealth v. Johnson, 966 A.2d 523, 532 (Pa. 2009); Commonwealth v. Sattazahn, 952 A.2d 640, 671 (Pa. 2008).

BY THE COURT:

James P. Bradley,                                    J.

36